IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEANNA LYNN JOHNSON, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-24-203-GLJ |
| | ) |
| FRANK BISIGNANO,[1] | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
|       Defendant. | ) |

**OPINION AND ORDER**

Claimant Deanna Lynn Johnson requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Bisignano is substituted for Michael O'Malley as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human*

---

[2] Step one requires Claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires Claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If Claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, Claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If Claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where Claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that Claimant can perform, taking into account his age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that Claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was forty-three years old at the time of the administrative hearing. (Tr. 94). She completed four or more years of college, and has worked as a fast-food worker, cemetery worker supervisor, and laundry worker. (Tr. 81, 310). She alleges she became unable to work on August 1, 2018, due to being blind or having low vision, insulin-dependent diabetes, severe major depression, and diverticulitis. (Tr. 309).

## Procedural History

Claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on June 6, 2022. Her applications were denied. ALJ James L. Bentley conducted an administrative hearing on September 12, 2023 and determined that Claimant was not disabled in a written decision dated November 28, 2023 (Tr. 68-83). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step two, he found Claimant had the severe impairments of depressive disorder, generalized anxiety

disorder, diabetes mellitus, obesity, cervical stenosis, and peripheral neuropathy, as well as the non-severe impairments of mild diabetic retinopathy, and a history of diverticulitis. (Tr. 71). At step three, he determined that Claimant did not meet a listing. (Tr. 71-74).

At step four, he found Claimant had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b), *i.e.*, except she could perform only occasional climbing of stairs and ramps, stooping, kneeling, crouching, and crawling; only frequent handling and fingering bilaterally; and no climbing ladders/scaffolds, or being on unprotected heights and dangerous moving machinery. As to her mental impairments, the ALJ found Claimant can understand, remember, and apply simple multi-step instructions, make simple work-related decisions and concentrate and persist for extended periods in order to complete simple multistep work tasks with routine supervision. Additionally, he determined she can interact with and respond appropriately to others in a routine work setting on an occasional basis and incidental to work being performed, but that she would need to avoid work-related interaction with the general public. Finally, he determined she needs to avoid fast-paced production jobs with strict quotas, but is able to adapt to a routine work setting where changes are infrequent, well-explained, and introduced gradually. (Tr. 74). The ALJ then determined that although Claimant could not return to her past relevant work, she was nevertheless not disabled at step five because there was work in the economy that she could perform, *i.e.*, marker, motel housekeeper, and inspector and hand packager. (Tr. 81-83).

## Review

On appeal, Claimant contends that the ALJ erred by failing to properly account for her mental impairments when he failed to incorporate functional limitations in the RFC that were identified by a consultative examiner whose opinion he found persuasive. Specifically, Claimant contends the ALJ: (i) failed to account for her poor concentration affecting her productivity, and should have incorporated a limitation for off-task behavior; (ii) improperly found she could have occasional interaction with coworker and supervisors despite Plaintiff being easily overwhelmed, struggling with depression/anxiety, and not adjusting well socially/emotionally; and (iii) failed to limit Claimant's work to be away from densely populated areas.  As to the second argument, Claimant argues that the limitation to occasional contact did not sufficiently account for Claimant's depression, anxiety, and discomfort around others, and he therefore should have further limited her to superficial contact.  The Court disagrees, and the decision of the Commissioner should therefore be affirmed.

The relevant medical evidence as to Claimant's mental impairments and cognitive deficits reflects she was assessed with bipolar effective disorder, depressed with mild paranoia, as well as a history of major depressive disorder and anxiety disorder, in 2017. (Tr. 446).  At that time, a physician considered her "totally disabled" due to bipolar disorder. (Tr. 446).  The record includes no history of counseling but does include fairly regular medication management for Claimant's mental impairments. (Tr. 536).  Although Claimant occasionally was positive for depression (Tr. 538, 855), the records more often indicate no particular psychiatric exacerbations (Tr., *e.g.*, 535. 542, 849, 852, 868, 916).

On October 13, 2022, Dr. Theresa Horton, Ph.D., conducted a diagnostic interview and mental status examination of Claimant. She appeared anxious, though euthymic, but her thought processes were logical, organized, and goal directed, and she reported a history of suicidal ideation but no present threat. Claimant's affect was consistent with her reported anxious and depressed mood, but she was oriented. Additionally, Dr. Horton noted that she has an adequate fund of information, but poor concentration that interfered with flow of speech and pace of problem-solving at times. Her pace was below average, and insight was fair. (Tr. 513). Dr. Horton assessed Claimant with generalized anxiety disorder with panic attacks and social anxiety, major depressive disorder (recurrent, moderate), and Cluster B traits (improved from youth). (Tr. 514). Dr. Horton assigned a guarded prognosis, stating:

> [Claimant] appears capable of understanding, remembering and managing mostly simple and somewhat more complex instructions and tasks. She likely understands more complex concepts, yet at times appears to struggle with poor concentration and this interferes with flow of speech as well as pace in problem solving. This has negative impact on her level of productivity. She does not appear to cope well with stress. She appears easily overwhelmed. She does appear to have experienced improved emotional stability since the birth of her son in 2004, though still does struggle with both depression and anxiety, but stopped the frequent suicidal behaviors. She does not appear to adjust as well socially/emotionally as she had by history and avoids all areas that are fast paced and/or densely populated. She appears to do best with people whom she knows well and places where she is familiar.

(Tr. 514). The consultative physical examination, conducted the same month, likewise includes probable diagnoses of, *inter alia*, depression and anxiety. (Tr. 527).

State reviewing physicians determined initially and upon reconsideration that Claimant can understand, recall and perform simple and detailed tasks with routine

supervision; concentration, attention, pace, and persistence are intermittently moderately compromised, but Claimant appears to have capacity to maintain adequate levels to fulfill obligations in a work setting most of the time, for at least two hours at a time, but would require reasonable breaks throughout the day; cannot perform production-paced work with strict production quotas; can relate to supervisors and peers on a superficial work basis, but would not work well in densely populated settings; can tolerate the public in their work space but not serve the public, and is able to adapt to a work setting and some forewarned changes in a usually stable work setting. (Tr. 159, 186).

In his written opinion at step four, the ALJ summarized the medical evidence in the record, as well as Claimant's hearing testimony. (Tr. 75-81). He concluded that Claimant's level of treatment for depression and anxiety was not suggestive of disabling limitations, noting she was largely treated by medication, with no individual or group therapy. (Tr. 77). He also pointed out that recent treatment notes indicated the negative psychiatric findings, and he briefly noted Claimant's history as a methamphetamine user until 2020. The ALJ summarized Dr. Horton's notes from the mental status examination, then noted that Claimant's treatment history strongly suggested that her condition was less limiting than alleged. (Tr. 77-78). He noted that the record did not contain abnormalities such as panic attacks, suicidal ideation, or psychosis, that she did not exhibit an inability to relate to her healthcare providers or significant difficulty with her memory, and she had no formal mental health treatment. He nevertheless expressed that he considered Claimant's history of depression and anxiety, as well as difficulty handling stress and being around others in assigning limitations to her RFC, stating:

> Thus, she is able to understand, remember and apply simple multi-step instructions, make simple work-related decisions and concentrate and persist for extended periods in order to complete simple multistep work tasks with routine supervision. She is able to interact with and respond appropriately to others in a routine work setting on an occasional basis and incidental to the work being performed, however, she would need to avoid work related interaction with the general public. She would also need to avoid fast paced production jobs with strict quotas. She is able to adapt to routine work setting where changes are infrequent, well-explained, and introduced gradually.

(Tr. 78).

The ALJ extensively discussed the state reviewing physician opinions, finding some portions consistent with the record and some not consistent. Importantly here, the ALJ found that the state reviewing physician opinions were not consistent with their assessed limitations regarding understanding, recalling, and performing detailed tasks, relating to supervisors and peers on a superficial work basis, or requiring reasonable breaks throughout the day. (Tr. 80). In support of this finding, the ALJ cited normal psychological presentation during routine exams, recent treatment records negative for psychiatric indicators, and no complaints of loss of concentration. As for Dr. Horton's opinion, the ALJ found her opinion consistent with the record and reasonably persuasive. (Tr. 80-81). Ultimately, the ALJ determined Claimant was not disabled. (Tr. 81-83).

Claimant asserts that the ALJ erred in assessing her RFC with regard to her mental impairments because he found Dr. Horton's opinion persuasive but purportedly neither adopted nor discussed all identified limitations. She contends the ALJ: (i) failed to account for her poor concentration affecting her productivity, and should have incorporated a limitation for off-task behavior; (ii) improperly found she could have occasional interaction with coworkers and supervisors despite Plaintiff being easily overwhelmed, struggling

with depression/anxiety, and not adjusting well socially/emotionally; and (iii) failed to limit Claimant's work to be away from densely populated areas.

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c.  Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors.  *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered.  *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Generally, the ALJ is not required to explain how the other factors were considered.  *Id.*  However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the

other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Upon review, the Court finds the ALJ's treatment of Dr. Horton's opinion was thorough and sufficient. At step four, the ALJ both noted her findings, and discussed both consistency and supportability. First, the Court notes that Dr. Horton's discussion regarding dense populations was that Claimant did not adjust as well socially/emotionally as she had by history because Claimant avoids fast-pace and/or densely populated areas. (Tr. 514). At most, this represents a vague reference to "adjustment," but offers no functional limitations. As the Commissioner correctly notes, the discussion of densely populated areas is not part of Dr. Horton's medical opinion and provides no particular limitation, but "simply clinical observations regarding the nature and severity of her" impairments. *Roy o/b/o Helton v. Comm'r, SSA*, 2022 WL 17726702, at *3 (10th Cir. Dec. 16, 2022); *see also G.B. v. Kijakazi*, 2023 WL 4101579, at *7 (D. Colo. June 21, 2023) ("While Dr. Thwaites generally discussed cognitive issues, he did not provide any specific opinion regarding how those impairment-related limitations or restrictions would affect Plaintiff's ability to perform the mental demands of work activities. Thus, even though Dr. Thwaites'

statements suggest some work-related issues, the ALJ did not err by failing to evaluate Dr. Thwaites' statements as 'medical opinion.'").

As to Claimant's arguments regarding concentration, productivity, and interaction, it is clear the ALJ considered Dr. Horton's opinion, along with the entire treatment record and the state reviewing physician opinions, throughout the sequential evaluation and gave reasons for not including further limitations in the RFC. (Tr. 78-81). Claimant points to no medical documentation not addressed by the ALJ that *does* provide further limitation. Indeed, Claimant's argument regarding occasional interaction as opposed to superficial is more properly addressed in the context of the state reviewing physician opinions, but she does not challenge on appeal the ALJ's assessment of these opinions, only Dr. Horton's opinion which contained no such limitation in her prognosis.

This Court recognizes that, while the Tenth Circuit has not made a definitive ruling on this question, other courts have held that "'occasional' and 'superficial' are not coterminous." *Wood v. Commissioner of Social Security*, 2019 WL 1614591, at *3 (S.D. Ohio, April 16, 2019) (collecting cases). "'Occasional contact' goes to the quantity of time spent with the individuals, whereas 'superficial contact' goes to the quality of the interaction." *Wartak v. Colvin*, 2016 WL 880945, at *7 (N.D. Ind. March 8, 2016). Failure to account for this distinction is not harmless and can bring into question the step five findings, which are always based on the RFC. Remand is inappropriate here, however, because the ALJ in this case made distinct findings that any limitation to superficial interaction was not persuasive and that occasional was a sufficient limitation. (Tr. 80) ("[T]he above findings are not consistent with the claimant's ability to . . . relate to

supervisors and peers on a superficial work basis."). *Cf. Greene v. Saul*, 2020 WL 4593331, at *4 (N.D. Ind. Aug. 11, 2020) ("Because the ALJ in this case made no attempt to explain the basis for his decision to limit Mr. Greene to 'occasional interaction' rather than 'superficial interaction,' the ALJ failed to build an accurate logical bridge between the evidence and the RFC.  This failure warrants remand.").

      Thus, the ALJ's opinion was sufficiently clear for the Court to evaluate it. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions.  Nothing more was required in this case.").  The ALJ specifically noted every medical record available in this case, gave reasons for his RFC determination and ultimately found that Claimant was not disabled.  *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding.  We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).  This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (citations omitted).  Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 12th day of August, 2025.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**